# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

JAMES RICE,

            Petitioner,    :    Case No. 1:17-cv-293

  - vs -                           District Judge Timothy S. Black
                                       Magistrate Judge Michael R. Merz

CHAE HARRIS, Warden,
  Warren Correctional Institution,

            Respondent.

# REPORT AND RECOMMENDATIONS

This habeas corpus case under 28 U.S.C. § 2254 was brought by Petitioner James Rice with the assistance of counsel. Petitioner seeks relief from his convictions in the Hamilton County Court of Common Pleas for aggravated robbery, aggravated burglary, and a firearm specification (Petition, ECF No. 1, PageID 1). Petitioner pleads one ground for relief:

> **Ground One**: James Rice's right to a speedy trial under the United States Constitution was violated due to the State's unjustifiable delay between accusation and prosecution. *Barker v. Wingo*, 407 U.S. 514 (1972).

*Id.* at PageID 5.

On Magistrate Judge Litkovitz's Order to do so, the Respondent has filed the State Court Record (ECF No. 4) and a Return of Writ (ECF No. 5). Petitioner then filed his Traverse (ECF No. 14), making the case ripe for decision. The Magistrate Judge reference in the case was recently transferred to the undersigned to help balance the workload in the Western Division of this Court (Transfer Order, ECF No. 16).

1

**Procedural History**

Respondent relies on the procedural history recited by the First District Court of Appeals on direct appeal (Return, ECF No. 5, PageID 935-38). Petitioner expressly raises no objection to this recitation of the procedural history[1] (Traverse, ECF No. 14, PageID 1948). That history is as follows:

> [*P2] In August 2012, Rice, who was on parole to the Commonwealth of Pennsylvania, met with his parole officer, James Hubbell, with the Adult Parole Authority ("APA") in Butler County. During the course of the meeting, Rice indicated that he needed to obtain a travel permit from his car. Hubbell and another parole officer accompanied Rice to his car. Rice then consented to a search of his vehicle by Hubbell and his partner, who found a bag on the rear seat of the vehicle which contained firearms, a holster, gloves, ski masks, zip ties, and a counterfeit police badge. Rice was arrested and placed in the Butler County jail. Hubbell then referred the matter to the city of Hamilton Police Department in Butler County, Ohio.
>
> [*P3] Shortly thereafter, Michael Waldeck, with the city of Hamilton Police Department, took the information regarding Rice and placed it on the Southwestern Ohio Police ("SWOP") Intelligence Website. He also sent out an email to other police agencies, which contained Rice's photograph and detailed the items recovered from Rice's vehicle, in the event that Rice may have fit the description of a potential suspect in any unresolved criminal case.
>
> [*P4] On August 31, 2012, Specialist Les Mendes with the Cincinnati Police Department contacted Hubbell. Mendes told Hubbell that Rice may have been involved in a home invasion in Hamilton County on August 16, 2012. Mendes was looking at charging Rice with aggravated burglary and impersonating a police officer. Hubbell could not recall telling Mendes that Rice was in custody, and he testified that his notes from their phone conversation did not reflect that any conversation to that effect had taken place. Hubbell testified that he had a second phone call with Mendes on

---

[1] Petitioner avers in his Traverse that he was indicted on January 30, 2017 (ECF No. 14, PageID 1947). That was the date a complaint, not an indictment, was filed against him for the offenses of conviction. The Magistrate Judge treats this mistake as unintentional.

September 10, 2012, when Mendes had relayed that two witnesses had picked Rice out of a photo lineup.

[*P5] Hubbell's supervisor, Teresa Williams, testified that Rice was arrested on August 20, 2012, prosecuted by Butler County, and sentenced to the Ohio Department of Rehabilitation and Correction ("ODRC") for 24 months. Williams testified that she took the initial phone call from Mendes on August 31, 2012. Mendes was looking at Rice and possibly other people for a home invasion. Williams testified that she had "specifically told Detective Mendes that [Rice] was in custody for the new [Butler County] charges, and also the APA had a hold on him that, even if he had posted bond, he wouldn't be leaving jail because he was on supervision to [the APA] for the Commonwealth of Pennsylvania," which had not yet issued a warrant for Rice's arrest.

[*P6] On September 19, 2012, Williams had another conversation with Mendes to relay some additional information that Hubbell had discovered. Mendes had stated in his initial call with the Butler County APA that Rice had committed the home invasion sometime between 11:30 p.m. and midnight on August 16th, but that Rice had purportedly been in Cambria County, Pennsylvania the morning of August 17th. So, Williams had shared with Mendes that there might be a time issue. Hubbell contacted the clerk of courts in Cambria County and determined that Rice had been seen at a window making a payment at 9:06 a.m. and again at 9:28 a.m. on the morning of August 17, 2012. Per their investigation with Google maps, Williams and Hubbell determined that Rice could have made it from Cincinnati, Ohio, to Cambria County in six hours and 20 minutes. Williams gave this information to Mendes on September 19, 2012. Williams could not recall if she had mentioned during the September 19, 2012 phone call whether Rice was in custody, but she testified that there had been no change in Rice's status at that point.

[*P7] Anthony Spinney, a civilian deputy with the Hamilton County Sheriff's Office, testified that before entering the complaint and warrant that had been sworn out by Mendes into the computer system, he ran a Law Enforcement Automated Data Systems ("LEADS") check and a National Criminal Information Center ("NCIC") background check. On January 30, 2013, a complaint, affidavit, and arrest warrant were entered into the clerk of court's system. Spinney testified that he had no information regarding the service of the warrant, and that he was unable to determine if someone was currently incarcerated.

[*P8] Regina Cox testified that she is employed by ODRC. She testified that Rice had been sentenced to two years in prison for having a weapon under a disability and for possession of drugs. She testified that a LEADS check had been run when Rice was admitted to ODRC on October 31, 2012, and 30 days before he was released from ODRC on August 19, 2014.

[*P9] Cox testified that ODRC notified the Hamilton County Sheriff's Office by letter on July 30, 2014, that Rice was in custody at the London Correctional Institute ("LoCI"), that he had outstanding charges against him, and that he was being released on August 19, 2014. The letter referenced a Hamilton County case number and a warrant against Rice that had been entered on January 30, 2013.

[*P10] Mendes testified that he was investigating a home-invasion burglary on August 16, 2012. He first heard of Rice when he read an email by the Hamilton Police Department to the SWOP Intel on August 21, 2012. He did a query on Rice and then contacted the issuing department. He looked over the report of the burglary offense, checked it with the height and weight of Rice, and compiled a photo lineup with Rice's photo to show the victims. On August 25, 2012, three of the four victims identified Rice as the perpetrator.

[*P11] Mendes contacted the APA in Butler County and spoke with Hubbell and Williams, who advised him that Rice was in custody. Mendes testified that he waited until January 30, 2013, to swear out the complaint and warrant, because he had lost contact with the victim. She was not returning his calls, and he wanted to confirm that she wanted to move forward with the charges. He filed the charges after he had heard back from her.

[*P12] Mendes testified that he may have contacted the Butler County jail, but he did not believe he had ever contacted the Butler County clerk's office to determine what had happened with Rice's arrest in Butler County. He did not believe he had ever contacted the ODRC to determine if Rice was incarcerated, but he did have knowledge, based on his conversations with Hubbell and Williams, that Rice was "doing some time for the prior offense, the probation violation." He did not recall a specific date when he learned this, but testified that it was probably prior to signing the warrant. Mendes further testified that he never contacted the ODRC to let them know an incarcerated person has a warrant. Instead, ODRC contacts him to let him know when it is time to pick up the inmate.

> [*P13] On August 19, 2014, Mendes traveled to LoCI where he arrested Rice. A grand jury indicted Rice on August 28, 2014, for one count of aggravated burglary and one count of aggravated robbery with firearm specifications arising out of the August 16, 2012 incident. On December 1, 2014, Rice filed a motion to dismiss the indictment against him on speedy-trial grounds. At the conclusion of the evidentiary hearing, the trial court denied Rice's motion, and his case proceeded to trial before the jury, which found him guilty of the charges and specifications.

*State v. Rice*, 2015-Ohio-5481, 57 N.E. 3d 84, 2015 Ohio App. LEXIS 5301 (1st Dist. Dec. 30, 2015); appellate jurisdiction declined 145 Ohio St. 3d 1460 (2016).

After the First District handed down its decision, Rice timely sought review in the Ohio Supreme Court, which did not accept the case. Rice then timely filed his habeas Petition in this Court.

## Analysis

Petitioner Rice seeks relief from his convictions on the ground the State of Ohio violated his Sixth Amendment right to a speedy trial. He properly exhausted this claim by raising it on direct appeal and asserting it before the Ohio Supreme Court. In those two courts, he joined it with a statutory claim under Ohio Revised Code § 2941.401 and constitutional claims under both the Ohio and federal Constitutions. In this Court his claim is properly limited to the Sixth Amendment claim because federal habeas corpus relief is only available for violations of the United States Constitution and this Court, in any event, cannot review state court decisions on state law questions. 28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010)*; Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983). "[I]t is not the province of a federal habeas court to reexamine state court determinations on state

law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); see also *Elmendorf v. Taylor*, 23 U.S. (10 Wheat.) 152, 160 (1825) (Marshall C.J.); *Bickham v. Winn*, 888 F.3d 248 (6th Cir. 2018)(Thapar concurring).

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 100 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).

Because the Ohio Supreme Court did not render a decision on the merits of the case, it is the First District's decision which this Court must review. *Ylst v. Nunnemaker*, 501 U.S. 797 (1991).

Rice's first argument on appeal was that the State violated both his state and federal constitutional rights "by failing to timely indict him for the aggravated-burglary and aggravated-robbery offenses." *Rice, supra*, at ¶ 16. Judge (now Justice) Fischer recognized that the United Supreme Court had held that the Sixth Amendment "right to a speedy trial attaches only when a defendant is 'indicted, arrested, or otherwise officially accused' of a crime or crimes." *Id.* at ¶ 18, citing *United States v. MacDonald*, 456 U.S. 1, 6 (1982), citing *United States v. Marion*, 404 U.S. 307, 313 (1971); and *Doggett v. United States*, 505 U.S. 647, 655 (1992). The First District recognized that Rice was not accused of any offenses arising out of the August 2012 home invasion until a complaint was filed on January 30, 2013. *Id.* at ¶ 21. It then applied to the pre-indictment delay a due process test prescribed by the Ohio Supreme Court in *State v. Luck*, 15 Ohio St. 3d 150 (1984), to determine that Rice was not protected by the Ohio Constitution's speedy trial clause

6

for any delay between the offenses and January 30, 2013. *Id.* at ¶ 21. However, relying on *Marion, supra*, it concluded Rice's Sixth Amendment right attached as of January 30, 2013. *Id.* at ¶ 22, relying on *State v. Selvage*, 80 Ohio St. 3d 465 (1997), and *State v. Adams*, 144 Ohio St. 3d 429 (2015). Judge Fischer then proceeded to apply the controlling Supreme Court precedent, *Barker v. Wingo*, 407 U.S. 514 (1972) as follows:

> [*P23] In *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the United States Supreme Court established an ad hoc balancing test that weighs the conduct of both the prosecution and the defendant to determine whether a defendant has been deprived of his constitutional speedy-trial rights. The four factors to be balanced are "the [l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id.* at 530. No single factor is determinative; rather, the court should conduct a balancing test. *Id.*
>
> [*P24] *Length of Delay*. Case law provides that periods of delay shorter than one year ordinarily are insufficient to justify inquiry under the remaining *Barker* factors. See *Doggett*, 505 U.S. at 652, fn.1, 112 S.Ct. 2686, 120 L.Ed.2d 520. Delays that exceed one year, however, generally require further investigation. *Id.* The period between the filing of the complaint, affidavit, and warrant on January 30, 2013, and Rice's indictment on August 28, 2014, was 18 months. This delay is sufficient to justify inquiry into the remaining *Barker* factors.
>
> [*P25] *Responsibility for the delay*. The next *Barker* factor relates to the reason for the delay. See *Barker* at 531. The inquiry into causation involves a sliding scale. Deliberately dilatory tactics must be weighed much more heavily against the state than periods of delay resulting from mere negligence. *Id.* "A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Id.* To the extent that valid reasons cause the delay, such as missing witnesses, the delay does not count against the state at all. *Id.* Delay that is caused by the defendant does not count against the state. *State v. Triplett*, 78 Ohio St.3d 566, 570, 1997 Ohio 182, 679 N.E.2d 290 (1997).

7

[*P26] Here, the record reflects that the complaint was filed and a warrant was issued to Rice at his home address. Officer Mendes testified that he did nothing to locate Rice after the warrant had been issued, because he knew Rice had been incarcerated. Mendes testified that he had never contacted the ODRC to let them know that an incarcerated subject had a warrant against him. Instead, Mendes waited for the ODRC to contact his department when the defendant was ready to be transported or released. Williams testified that she had told Officer Mendes on August 31, 2012, that Rice was incarcerated. Because the record reflects that Officer Mendes knew Rice was incarcerated, yet made no attempt to serve Rice with the criminal complaint, the state bears significant responsibility for the 18-month delay. Thus, the second factor weighs slightly against the state and in favor of Rice.

[*P27] *Defendant's assertion of his right to a speedy trial*. The third factor addresses the timeliness and frequency of the defendant's assertions of his speedy-trial right. *See Barker*, 407 U.S at 529, 92 S.Ct. 2182, 33 L.Ed.2d 101 (instructing courts "to weigh the frequency and force of objections as opposed to attaching significant weight to a purely pro forma objection"). Here, Rice knew of the charges at the latest on August 19, 2014, when he was arrested for the offenses following his release from the LoCI. Yet he failed to assert his right to a speedy trial until December 1, 2014, when he filed his motion to dismiss the indictment against him. While "generally when the defendant has filed a motion to dismiss based on speedy trial violations, Ohio courts [have] weigh[ed] the third *Barker* factor in the defendant's favor," *State v. Watson*, 10th Dist. Franklin No. 13AP-148, 2013-Ohio-5603, P 29, there is a significant four-month gap in time for which Rice bears some responsibility. *See State v. Walker*, 10th Dist. Franklin No. 06AP-810, 2007-Ohio-4666, P 31. Thus, we conclude that the third factor weighs slightly in the state's favor.

[*P28] *Prejudice caused by the delay*. The fourth and final factor implicates the extent to which the defendant was prejudiced by the delay attributable to the state. *Barker*, 407 U.S. at 532, 92 S.Ct. 2182, 33 L.Ed.2d 101. Regarding this factor, the United States Supreme Court has held that the inquiring court should assess prejudice "in light of the interests the speedy trial right was designed to protect," including preventing oppressive pretrial incarceration, minimizing the accused's anxiety, and limiting the possibility that the passage of time will impair the accused's ability to mount a defense. *Id.* The latter concern is, by far, the most serious one. *Id.* When witnesses "die or disappear during a delay, the prejudice is obvious." *Id.* In aggravated cases, involving excessive pretrial delay,

prejudice may be presumed despite the defendant's inability to identify particular testimony or evidence that has become unavailable due to the passage of time. *Doggett*, 505 U.S. at 655-56, 112 S.Ct. 2686, 120 L.Ed.2d 520.

[*P29] In *State v. Triplett*, 78 Ohio St.3d 566, 1997 Ohio 182, 679 N.E.2d 290 (1997), the Ohio Supreme Court held that a 54-month delay was not excessively prejudicial to justify dismissal of an indictment on speedy-trial grounds. Here, the delay to Rice is significantly shorter than the 54-month delay in *Triplett* and the eight-and-a-half-year delay in *Doggett*. Thus, we decline to find the 18-month delay to be automatically prejudicial to Rice. *Compare State v. Williams*, 10th Dist. Franklin No. 13AP-992, 2014-Ohio-2737, P 21-22 (holding a four-year delay between the filing of the complaint and defendant's arrest to be prejudicial, warranting dismissal of the indictment); *see State v. Stevens*, 3d Dist. Logan No. 8-14-09, 2014-Ohio-4875, P 24 (holding that, generally, courts "have found presumed prejudice only in cases in which the post-indictment delay lasted at least five years").

[*P30] Rice argues, nonetheless, that because the 18-month delay cost him the possibility to serve the Butler County sentence concurrently with the Hamilton County sentence, he has shown prejudice. He relies on *Smith v. Hooey*, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969), which has been cited by the Eighth Appellate District for this proposition. *See State v. Boone*, 8th Dist. Cuyahoga No. 81155, 2003-Ohio-996, P 28, citing *State v. Floyd*, 8th Dist. Cuyahoga No. 39929, 1979 Ohio App. LEXIS 10194 (Oct. 25, 1979), and *Smith*.

[*P31] In the *Smith* case, Smith was in federal prison, but he faced charges in state court. Smith wanted to be brought to trial on the state charges, and he sought repeatedly for six years to get a prompt trial. The state, however, refused to bring Smith to trial, because he was already in prison serving another sentence. The United States Supreme Court disagreed with the state. The Court noted that undue delay may cause the person to lose forever the possibility of at least partially concurrent sentences, that the conditions of his current custody may be harsher than otherwise, that the threat of another pending charge may be as oppressive as for a person who remains free and that long delays can impair a person's ability to defend against a pending charge. *Smith* at 378-379.

[*P32] But in *Smith*, the defendant's loss of an opportunity to serve concurrent sentences was but one of many circumstances over a six-year period noted by the United States Supreme Court in explaining

why the state prosecutor in that case could not refuse to prosecute the defendant while he was serving the federal sentence. Several federal and state courts have rejected the broad reading of *Smith* that Rice asserts in this case. Those courts have refused to hold that an unjustified delay in bringing a defendant to trial violates the defendant's right to a speedy trial where, as here, the only prejudice alleged is the theoretical and speculative loss of the opportunity for the defendant to serve the sentence on the pending charge concurrently with the sentence in another case. *See United States v. White*, 985 F.2d 271, 276 (6th Cir.1993) (holding that the loss of the opportunity to serve concurrent sentences was "not sufficient to constitute 'substantial prejudice' to the defendant"); *United States v. Cabral*, 475 F.2d 715, 719-720 (1st Cir.1973) (holding defendant's allegation that he had lost the opportunity to serve concurrent sentences to be "highly speculative" and to "fall short of a demonstration of actual prejudice"); *see also United States v. Gregory*, 322 F.3d 1157, 1164 (9th Cir.2003) (holding sentencing prejudice to be insufficient as speculative where the court could have adjusted the subsequent sentence downward in light of time served for the previous sentence); *State v. Jones*, 4th Dist. Ross No. 95CA2128, 1996 Ohio App. LEXIS 2386, *7-8 (June 4, 1996) (holding the defendant's lost opportunity to bargain for concurrent sentences to be insufficient to show actual prejudice).

[*P33] Here, Rice does not claim that the 18-month delay caused him to suffer unduly oppressive incarceration, presumably because he was already serving a sentence for the Butler County offenses at the time the Hamilton County complaint was filed against him. Nor does he allege that he suffered any anxiety as a result of the delay. Rice, moreover, did not argue in his motion to dismiss that the delay prejudiced his defense. Instead, he has asserted only that the period of pretrial delay deprived him of an opportunity to serve concurrent sentences for the Butler County and Hamilton County offenses. We agree with those courts that have held that a speculative opportunity to serve concurrent sentences is insufficient by itself to set forth the necessary prejudice under the fourth *Barker* factor. As a result, we conclude that the fourth factor weighs in favor of the state.

[*P34] A balancing of the four factors in the *Barker-Doggett* analysis shows that two are weighted in Rice's favor and two factors are weighted in the state's favor. Although we agree with Rice that the state was dilatory in its efforts to bring him to trial, we find no evidence that its acts were willfully orchestrated to gain a tactical advantage. While Rice made a somewhat delayed effort to assert his speedy-trial right, he has not demonstrated any actual prejudice to

> his defense. We thus cannot conclude that Rice's constitutional speedy-trial rights were violated.

*Rice*, 2015-Ohio-5481..

To obtain habeas corpus relief in this case, Petitioner must show that the First District's decision was contrary to or an objectively unreasonable application of the holdings of clearly established United States Supreme Court precedent.

First of all, in attempting to do so, Petitioner does not quarrel with the First District's exclusion from consideration of the time between the offense and the filing of the complaint (August 2012 to January 30, 2013).

Petitioner also treats *Barker* as the controlling precedent and agrees with the First District as to the four factors to be assessed under *Barker*: (1) length of delay, (2) reasons for the delay, (3) defendant's assertion of his speedy trial rights, and (4) prejudice to the defendant (Traverse, ECF No. 14, PageID 1950). Significantly, Petitioner also cites *Barker* for the proposition that "[n]one of the factors are essential or dispositive; rather, they are interrelated and courts must consider them comprehensively." .*Id.* at ECF No. 1950, citing *Barker*, 407 U.S. 514, 523, 530-531, 533. Petitioner also agrees that the First District "correctly concluded that the first two factors . . .weighed slightly in Mr. Rice's favor." *Id.*

Petitioner, however, disagrees with the First District's weighing of the last two factors which will be examined here separately.

**Delay in Assertion of Speedy Trial Right**

The First District found that Rice learned of the charges when he was arrested on August 19, 2014, and did not assert his speedy trial right until he filed a motion to dismiss on that basis on December 1, 2014. Petitioner argues the First District found his assertion of rights "untimely" (Traverse, ECF No. 17, PageID 1950). Not so. Actually the court found he bore "some responsibility" for that delay and weighed it "slightly" against him. *Rice, supra*, at ¶ 27.

Petitioner relies on Judge Cunningham's dissent. She would have weighed this factor in favor of Rice because the motion to dismiss "contained numerous exhibits that precipitated an evidentiary hearing on the motion. While his counsel could have conceivably proposed his argument to the court at an earlier stage of the proceedings, given the amount of evidence presented with the motion, this was 'not a case of last-minute maneuvering' by Rice."

Examination of the record shows the Motion to Dismiss was indeed filed on December 1, 2014 (State Court Record, ECF No. 4, PageID 37). It was accompanied by fifty-one pages of exhibits, *id.* at PageID 53-103. But all of the exhibits are public records. Fifteen pages comprise case law reports. Four pages are the indictment in this case. Six pages are documents from Rice's Butler County conviction that resulted in his being incarcerated when the complaint was filed against him. Several pages constitute records of the results of the photographic lineup viewed by the victims of the offenses which presumably Rice's counsel would not have received until discovery was provided after arraignment on the indictment. None of the exhibits is the result of independent investigation by counsel and there was no particular showing why it would have taken three and one-half months to gather them.

Since the trial did not commence until January 12, 2015, Judge Cunningham's observation that raising the speedy trial objection was not "last minute maneuvering" was certainly reasonable.

It was not parallel to the morning-of-trial speedy trial motions this Court frequently sees in habeas corpus cases. On the other hand, Judge Cunningham's conclusion that the delay was the result of the need to gather the exhibits before filing the motion is speculative. She does not support it by any record reference to the time needed to gather the exhibits and Rice made no such argument in his brief on appeal (Appellant's Brief, State Court Record, ECF No. 4, PageID 138-39). Instead, his sole argument about delay in assertion was that it would not support a finding that he had waived the right. *Id.*

Considering Judge Cunningham's dissent, this Magistrate Judge cannot say the contrary conclusion of the majority that Rice bore "some responsibility" for the delay is an unreasonable determination of the facts based on the evidence before the First District,

**Prejudice**

The fourth *Barker* factor requires a court to evaluate whether a defendant has been prejudiced by the delay in his trial. That assessment is to be made "in light of the interests the speedy trial right was designed to protect," including preventing oppressive pretrial incarceration, minimizing the accused's anxiety, and limiting the possibility that the passage of time will impair the accused's ability to mount a defense." *Rice*, 2015-Ohio-5481 at ¶ 28, quoting *Barker*, 407 U.S. at 532

The First District majority found the eighteen-month delay between accusation and trial was not presumptively prejudicial, noting the denial of relief by the Ohio Supreme Court and the United States Supreme Court after delays of fifty-four months and eight and one-half years, respectively. *Rice, supra*, at ¶29, citing *State v. Triplett*, 78 Ohio St. 3d 566 (1997), and *Doggett*

*v. United States*, 505 U.S. 647 (1992). It also found that the only actual prejudice Rice claimed to have suffered was loss of the possibility of serving the Butler County and Hamilton County incarceration times concurrently. *Id.* at ¶ 33.

Judge Cunningham in dissent would have found both a presumption of prejudice and actual prejudice. As to a presumption of prejudice, she cited two Ohio Supreme Court cases that had indulged the presumption of prejudice where only ten and nine months, respectively, had expired from accusation. *Rice, supra*, ¶¶ 49-52. She did not offer any analysis of asserted actual prejudice. *Id.*

In alleging prejudice from the inability to obtain concurrent sentences, Rice relied on *Smith v. Hooey*, 393 U.S. 374 (1969), in the First District and does so again here. In that case the Supreme Court held that the fact that an indicted person was incarcerated on other charges in another jurisdiction did not excuse a State from diligent good faith efforts to obtain the person's presence for trial. Justice Stewart cited various reasons why an already-incarcerated person might be prejudiced by delay, including "the possibility that the defendant already in prison might receive a sentence at least partially concurrent with the one he is serving may be forever lost if trial of the pending charge is postponed." *Id.* at 378. However, the Court also mentioned how the other *Barker* factors might apply and made no analysis of whether concurrent sentences were likely in this particular case. In fact, the Court did not even conclude there was a speedy trial violation, but remanded for further proceedings which Justice White noted could include a finding of no violation of the Sixth Amendment. *Id.* at 384.

In declining to find any prejudice in the possible impact on concurrent sentencing, the First District majority considered *Smith v. Hooey,* but noted that that "was but one of many circumstances" relied on by the Supreme Court, and that other federal courts had declined to rely

14

on loss of possible concurrent sentencing alone. *Rice, supra*, at ¶ 32, citing, *inter alia, United States v. White*, 985 F.2d 271 (6th Cir. 1993). In *White*, the Sixth Circuit found that loss of an opportunity to have sentences run concurrently was not sufficient to constitute "substantial prejudice." *Id.* at 276.

In this case, Rice was sentenced to Ohio prison time on the basis of contraband found when he was stopped as a Pennsylvania parole violator. The record does not show that he was ever punished for the parole violation separately from the new offenses. The home invasion for which he was sentenced in the present case also would have occurred while he was on parole from Pennsylvania and there is no showing he was separately punished for that violation. The home invasion offenses at issue here were completely separate from the drug and weapons offenses of which he was convicted in Butler County, unless, of course, he used/possessed the same gun that he had used in the home invasion, which would hardly be a circumstance recommending concurrent sentences.

The record also does not purport to show how reasonable any hope of concurrent sentences would have been. Counsel do not cite any statutory provisions or Ohio case law that would suggest concurrent sentences would be appropriate under these circumstances, nor do they cite any practice of the Hamilton County Common Pleas Court in this regard.

**Objectively Reasonable Application of *Barker***

The ultimate question for this Court is whether the First District's decision is an objectively reasonable application of *Barker*. To prevail, a habeas petitioner must show "that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was

an error well understood and comprehended in existing law beyond any possibility for fairminded [sic] disagreement." *White v. Wheeler*, 577 U.S. ___, 136 S.Ct. 456, 193 L.Ed.2d 384 (2015)(per curiam), quoting *White v. Woodall*, 572 U.S. ___, 134 S Ct. 1697, 188 L.Ed.2d 698 (2014), quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011). "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). Here, the *Barker* decision, which all agree is the controlling precedent, requires state court to consider and weigh four factors. The First District did that. The weight it assigned to each of the factors is not prescribed by Supreme Court precedent, but this Court cannot say any fair-minded jurist would find error in the weighing.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends the Petition should be dismissed with prejudice. Because Judge Cunningham's dissent is well-reasoned, this Magistrate Judge's conclusion is certainly debatable among jurists of reason and Petitioner should therefore be granted a certificate of appealability to permit review by the Sixth Circuit.

June 15, 2018.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).